UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60027-CR-ZLOCH/Snow

UNITED STATES OF AMERICA,

      Plaintiff,

v.

FRANK HERNANDEZ, et al.

      Defendants.

---

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the following motions to dismiss the instant indictment, which were referred to United States Magistrate Judge Lurana S. Snow for report and recommendation:

1. Defendants **E.V.A. Global, Inc., and Tropic Spiral Systems, Inc.'s** Motion to Dismiss Indictment on the Grounds That Title 21 U.S.C. § 841(a)(1) Is: (A) Unconstitutional as Applied to the Conduct Alleged Herein, (B) Not Applicable under the Principle of Lenity or (C) Barred under the Doctrine of Entrapment by Estoppel (DE 344) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols;**

2. Defendant **Hannibal Edwards'** Motion for Order Dismissing Indictment for Failure to State an Offense Because a Licensed Physician Cannot Be Charged with Illegal Distribution

Based on Invalid Prescriptions (DE 457) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols**;

   3. Defendant **Serge Francois'** Motion to Dismiss Indictment (DE 464) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols**;

   4. Defendant **Howard Helfant's** Motion to Dismiss Indictment (DE 472) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols**;

   5. Defendant **Paul Wiseberg's** Motion to Dismiss Counts 1 and 9-12 of the Indictment (DE 482), adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols**, and

   6. Defendant **Hannibal Edwards'** Motion for Order Dismissing Indictment for Failure to State an Offense Because the CSA Does Not Prohibit the Medical Practice of Prescribing Controlled Substances over the Internet Based on a Patient Questionnaire (DE 524), adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, and Everett Echols**.

As discussed below, most of the arguments asserted by the defendants in these motion are prematurely raised in a pretrial motion attacking the validity of the indictment. Moreover, those arguments, even if properly argued in a motion for judgment of acquittal at trial, are not persuasive.

The motions which do assert appropriate challenges to the facial validity of the indictment, advance arguments which have been squarely rejected by the Eleventh Circuit. Accordingly, all six motions to dismiss should be denied.

## I. THE INDICTMENT

The indictment charges twenty-one defendants with conspiracy to distribute Schedule III and IV controlled substances in connections with sales over the Internet, in violation of 21 U.S.C. § 846 (Count 1). The defendants charged include three physicians (Everett Echols, Hannibal Edwards and David Baron), three pharmacists (Edgar Cruz, Thomas Walker and Serge Francois), eight business owners (Frank Hernandez, Amada Hernandez, Steven Marhee, Emmanuel Antonio, Lawrence Pinkoff, Theophilos Antoniou, Paul Wiseberg and Howard Helfant) and seven corporations (C & H Wholesale, Lifeline Pharmacy, Inc., EZ RX, LLC, E.V.A. Global, Inc., Tropic Spiral Systems Inc., RX Direct Pharmacy, Inc. and Concept RX, Inc.).

The indictment also contains eleven substantive counts, charging various combinations of defendants with distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and

a forfeiture provision.  It alleges that during the two-year course of the conspiracy (May 2002 - May 2004), a total of 122,194 prescriptions were written for more than nine million pills, consisting primarily of diet pills and sleeping pills.

No overt acts are alleged in the indictment, but the Government's theory of prosecution has been summarized in its response to the motion to dismiss filed by defendants E.V.A. Global and Tropic Spiral Systems:

> The method used for distribution of these controlled drugs involved interaction on the internet.  Once the client found a site offering diet pills and/or sleeping pills for sale, of which there were more than 400 tied to the defendants in this case, the client was redirected to a site to fill out a "Patient Questions" page.  On this page, which was controlled by defendants Tropic Spiral and Theophilos Antoniou, each client was asked questions about their date of birth, height, weight and sex.  Thereafter, the client was asked the following fourteen questions:
>
> 1. What is the medical condition that you are requesting medication for?
>
> 2. List any current or past medical problems, including surgeries.
>
> 3. List all current medications, including nonprescription medicines.
>
> 4. Please list all medications that you plan to take while on this program.
>
> 5. Please list any allergies (including medications).

4

6. Do you have any medical condition that you are requesting medication for?

7. Is there anything else in your medical history you deem relevant?

8. Do you have high blood pressure?

9. Are you presently pregnant or have been nursing within the past 12 months?

10. Have you read and agree to our Patient Responsibility Statement?

11. Have you read and agree to our Waiver and Consent Agreement?

12. Achieve Maximums Results

13. Have you read and agree to our Notice of Privacy Statement?

14. Did you answer all questions truthfully to the best of your [sic]

The purpose of the height and weight questions was to determine the requesting customer's body mass index. If the body mass indicated by answering the questions was inappropriate to receive diet pills, then the customer's request was automatically rejected by the Tropic Spiral Systems web site and the customer was informed of the reason for rejection. In that case, like the agents purchasing diet pills in an undercover capacity in the present case, the customer could change the response to the height and weight questions until achieving a body mass index accepted by the Tropic Spiral Systems web site. The answers to the questions were never checked for accuracy in any event by a human and specifically not by one of the physicians reviewing the questionnaires, and requests for pills.

Upon completion of the questions the client was then directed to a web page to

indicate the method of payment, and shipping information. On this web page, the client was told that payment by credit card would be billed by E.V.A. Global, Inc. The client was also told that if they chose to pay by C.O.D. or mail in their payment then the payment instrument should indicate E.V.A. Global, Inc. as the payee. . . .

Not until after payment in some form was received by E.V.A. Global, Inc., for the ordered drug, was any further processing completed. Once money was received by E.V.A. Global, Inc., an e-mail to the client was generated indicating that payment was received. Within a short time after receipt of the money, a licensed physician, employed by E.V.A. Global, Inc., was purported to have reviewed the questionnaire submitted by the client and either approved or disapproved the requested order. None of the physicians involved in this case were licensed in the State of Florida, but were licensed in other states, and therefore required to abide by the laws of their licensing state as well as the laws of Florida and the United States. The vast majority of orders placed were approved for filling by the doctors reviewing he requests. Within hours of approval of the order by a doctor, the order was filled by a pharmacy licensed in the State of Florida and shipped to the shipping address indicated in the order. None of these orders were changed by the physicians. Throughout the course of these events there was no contact between the ordering customer and the doctor purporting to approve the requested order for drugs. Nor was there any direct contact between the ordering customer and the pharmacy filling the order. In fact, the doctors purporting to approve the orders did so by logging onto an internet site to review orders which were in a [queue] awaiting review for approval or disapproval. Once the doctors reviewed and approved the order, the orders were then placed into a [queue] for the various pharmacies and pharmacists to fill the order.

(Government's Response To Motions to Dismiss Indictment Found at DE #344 (DE 425-1), pp. 3-5.)

## II. MOTIONS TO DISMISS

### A. E.V.A. Global and Tropic Spiral Systems (DE 344)

These defendants argue that the statute (21 U.S.C.
§ 841(a)(1)) is unconstitutional as applied to them because (1)
there is no law which precludes the sale of prescription medication
over the Internet, where the patient and the physician who provides
the medication never meet face to face, (2) since the statute is
ambiguous, the rule of lenity precludes their conviction and (3)
based on the ruling of United States District Judge Anthony Alaimo
in a probation hearing involving defendant Lawrence Pinkoff, this
prosecution is precluded by the doctrine of entrapment by estoppel.

### B. Hannibal Edwards (DEs 457 and 524)

Defendant Edwards, a physician, has filed two motions to
dismiss the indictment.  In the first (DE 457), he argues that a
licensed physician cannot be charged with illegal distribution
based on invalid prescriptions.  In the second motion (DE 587), he
contends that the indictment fails to state an offense because the
Controlled Substances Act does not permit the Government to charge
or a jury to decide that the medical practice of prescribing
controlled substances over the Internet without a face-to-face
encounter constitutes drug dealing, without proof that the
substances were distributed to addicts or abusers, relying on the
recent Supreme Court decision in Gonzalez v. Oregon, 546 U.S. 246
(2006).

## C. **Serge Francois (DE 464)**

Defendant Francois, a pharmacist, seeks to dismiss the indictment on the grounds that Congress did not intend to impose criminal sanctions based on completely standardless federal regulations, citing <u>Gonzalez</u>, <u>supra</u>.

## D. **Howard Helfant (DE 472)**

Defendant Helfant, a pharmacy owner, argues: (1) the Government's theory of prosecution is premised upon an arbitrary conclusion that an online physician questionnaire does not amount to a legitimate physician/patient relationship; (2) the defendant's due process rights were violated because, presumably, the Government instructed the grand jury based on this erroneous theory of prosecution; (3) Congress never intended to criminalize this type of conduct; (4) the states, not the federal Government, should regulate what constitutes the legitimate practice of medicine; (5) the defendant's reliance on the online questionnaire utilized in this case does not amount to the sort of breach of professional conduct required for prosecution under § 841(a)(1), and (6) Congress never intended to authorize criminal prosecution of medical professionals based upon such a vague interpretation of the applicable regulation, 21 C.F.R. § 1306.04.

## E. **Paul Wiseberg (DE 482)**

Defendant Wiseberg, a pharmacy owner and operator, contends that the instant indictment should be dismissed because: (1) the indictment does not charge a crime by licensed practitioners; (2) violations of 21 C.F.R. § 1306.04 cannot

constitute a criminal offense; (3) the Attorney General cannot regulate medical practice, citing <u>Gonzalez</u>, <u>supra</u>; (4) the indictment is facially defective because it fails to allege: (a) that the conduct of the defendants was "outside the course of professional practice" and "not for a legitimate medical purpose," (b) that the statutory exemption for registrants is inapplicable, (c) sufficient particulars regarding the place where substances were distributed, the people to whom they were distributed, the manner of distribution and the formation and conduct of the alleged conspiracy, and (5) the conspiracy count (Count 1) alleges multiple conspiracies.

### III. <u>RECOMMENDATIONS OF LAW</u>

### A. <u>Standards for Evaluating the Sufficiency of an Indictment</u>

Challenges to the sufficiency of an indictment are premised upon the rule that a criminal conviction cannot be upheld if the indictment upon which it is based does not set forth the essential elements of the offense. <u>United States v. Gayle</u>, 967 F.2d 483, 485 (11th Cir. 1992)(en banc), cert. denied, 507 U.S. 967 (1993). This rule serves two functions:

> First, it puts the defendant on notice of "the nature and cause of the accusation as required by the Sixth Amendment to the Constitution. Second it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime."

<u>United States v. Fern</u>, 155 F.3d 1318, 1325 (11th Cir. 1998), quoting <u>Gayle</u>, 967 F.2d at 485.

The general rule is that a court should not look beyond the face of the indictment to determine its sufficiency. As noted by the court in United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992):

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face.

In determining whether an indictment is subject to dismissal, the allegations contained in the indictment must be taken as true. United States v. National Dairy Products Corp., 372 U.S. 29, 33 n.2 (1952).

An indictment is sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Dabbs, 134 F.3d 1071, 1079 (11th Cir. 1998). Pursuant to Fed.R.Crim.P. 12(b), a motion alleging a defect in the indictment or information may be made before trial. However, the trial court may, at any time, hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.

In construing the language of the rule, this Circuit has held that "when the issue raised involves a question that may not

be determined without 'trial of the general issue,' it is not proper for decision by pretrial motion.  The 'general issue' has been defined as evidence relevant to the question of guilt or innocence." <u>United States v. Ayarza-Garcia</u>, 819 F.2d 1043, 1048 (11th Cir. 1987), *cert. denied*, 484 U.S. 969 (1987).  If a claim or defense implicates the "general issue," the proper vehicle for raising this issue is a motion for judgment of acquittal under Fed.R.Crim.P. 29 and/or an argument to the jury, not a pretrial motion to dismiss.  <u>Id.</u>

**B. <u>Prosecution of Medical Professionals Under The Controlled Substances Act</u>**

Title 21, United States Code § 841 provides, in pertinent part:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally -
>
> > (1) to manufacture, distribute, or dispense, or possess with intent to distribute, or dispense, a controlled substance;

Pursuant to 21 U.S.C. § 821, persons who wish to lawfully dispense or distribute controlled substances, such as doctors and pharmacists, must register with the Attorney General. Authorization to dispense or distribute controlled substances must be consistent with the individual's registration and in conformity with other provisions of the Controlled Substances Act.  Under 21 U.S.C. § 829, Schedule I, II, III and IV controlled substances may dispensed only by prescription, except when dispensed by a

practitioner (other than a pharmacist) directly to the ultimate user. Refills of such prescriptions are limited by the statute.

The issue of whether registered medical professionals are subject to prosecution under 21 U.S.C. §§ 841(a)(1) was settled in Moore v. United States, 423 U.S. 122 (1975). In Moore, the respondent was a registered physician charged with distribution of methadone, even though he was dispensing the drug to patients by prescription. The District of Columbia Circuit Court of Appeals held that the respondent could not be convicted under 21 U.S.C. § 841(a)(1), because Congress intended to subject registered physicians to prosecution only pursuant to 21 U.S.C. §§ 842 and 843, which provide less severe penalties than § 841. The Supreme Court reversed, holding that "only the lawful acts of registrants are exempted" from the provisions of § 841. Id. at 131.

The Court observed that in enacting the Controlled Substances Act, 21 U.S.C. § 801, et seq. (CSA), Congress intended to strengthen existing law enforcement authority in the field of drug abuse. Id. at 132. The legislative history indicated that "Congress was concerned with the nature of the drug transaction, rather than the status of the defendant." Id. at 134. Severe penalties were imposed on those "who sold drugs, not for legitimate purposes, but 'primarily for the profits to be derived therefrom.'" Id. at 135, quoting H.R. Rep. No 91-444, p. 10.

The Court further noted that "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels," and that "registrants, who have the

greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." Id. Therefore, the Court held that there was "nothing in the statutory scheme or the legislative history [of the CSA] which justifies a conclusion that a registrant . . . is thereby exempted from prosecution under § 841 for the significantly greater offense of acting as a drug pusher." Id. at 138.

The Court rejected the respondent's argument that his conduct was "authorized" by the provisions of the CSA, holding that "the scheme of the statute, viewed against the background of the legislative history, reveals an intent to limit a registered physician's dispensing authority to the course of his 'professional practice.'" Id. at 140. Thus, "[i]mplicit within the registration of a physician is the understanding that he is authorized only to act 'as a physician.'" Id. at 141. The issue of whether a physician's conduct exceeds the bounds of professional practice, rendering him criminally liable under § 841, is one for determination by a jury. Id. at 142.

The Court found that the evidence presented at the respondent's trial was sufficient for the jury to find that his conduct exceeded the bounds of professional practice:

> he gave inadequate examinations or none at all. He ignored the results of the tests he did make. He did not give methadone at the clinic and took no precautions against its misuse and diversion. He did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded. He did not charge for medical services rendered, but graduated his fee according to the number of

> tablets desired.   In practical effect, he
> acted as a large-scale "pusher" and not as a
> physician.

Id. at 142-43.   Finally, the Court rejected the respondent's argument that the statute was sufficiently ambiguous that it should be construed in his favor despite the clear intent of the Congress, and held that the "rule of lenity" did not apply.   Id. at 145.

Even prior to the decision in Moore, binding precedent in this Circuit taught that a licensed physician was not immune from prosecution under § 841 by virtue of his status, and the statute was not unconstitutionally vague as applied to physicians.   United States v. Collier, 478 F.2d 268 (5th Cir. 1973).   See, also, Brown v. United States, 250 F.2d 745 (5th Cir. 1958), cert. denied, 356 U.S. 938 (1958)(authorizing prosecution of a physician under provisions of the Food, Drug and Cosmetic Act, which preceded the CSA).   The Collier court held that physician "is restricted to dispensing or prescribing drugs in the bona fide treatment of a patient's disease" and "under the guise of treatment a physician cannot sell drugs to a dealer nor distribute drugs intended to cater to the cravings of an addict."   Id. at 271.   The court recognized that a physician must be given certain latitude in making a medical judgment concerning the right treatment for an individual patient.   Therefore, "'[w]hat constitutes bona fide medical practice must be determined upon consideration of evidence and attending circumstances.'"   Id. at 272, quoting Linder v. United States, 268 U.S. 5, 18 (1925).

Since _Moore_, federal appellate courts have upheld prosecutions of pharmaceutical personnel for violating 21 U.S.C. § 841. _See, e.g._, _United States v. Limberopoulos_, 26 F.3d 245 (1st Cir. 1994) (pharmacist); _United States v. DeBoer_, 966 F.2d 1066 (6th Cir. 1992) (pharmacy tech). Additionally, courts have held that medical professionals, pharmacists and even lay persons can conspire with physicians to dispense or distribute drugs in violation of the statute. _United States v. Hayes_, 595 F.2d 258 (5th Cir. 1979), _cert. denied_, 444 U.S. 866 (1979) (pharmacist); _United States v. Vamos_, 797 F.2d 1146 (2nd Cir. 1986), _cert. denied_, 479 U.S. 1036 (1987) (physician's nurse and pharmacist); _United States v. Green_, 511 F.2d 1062 (7th Cir. 1975), _cert. denied_, 423 U.S. 1031 (1975) (owner of pharmacy and of building in which pharmacy and clinic were located); _United States v. Albert_, 675 F. 2d 712 (5th Cir. 1982) (unindicted co-conspirators); _United States v. Hicks_, 529 F. 2d 841 (5th Cir. 1976), _cert. denied_, 429 U.S. 856 (1976) (security guard).

More importantly for purposes of the instant case, the Courts of Appeal have upheld convictions of physicians and pharmacists for distributing controlled substances over the Internet. _United States v. Fuchs_, 467 F. 3d 889 (5th Cir. 2004), _cert. denied_, 127 S.Ct. 1502 (2007); _United States v. Nelson_, 383 F.3d 1227, 1232 (10th Cir. 2006).

In prosecutions under § 841 involving distribution of drugs that have been prescribed by a licensed physician, the Government is required to prove three elements: (1) that the

defendant distributed a controlled substances, (2) that he or she acted intentionally and (3) that he or she prescribed the drug without a legitimate medical purpose and outside the course of professional practice. United States v. Tran Tong Cuong, 18 F.3d 1132, 1137 (4th Cir. 1994); United States v. Johnson, 71 F.3d 539, 542 (6th Cir. 1995), cert. denied, 517 U.S. 1113 (1996); United States v. Feingold, 454 F.3d 1001, 1006 (9th Cir. 2006), cert. denied, 127 S.Ct. 695 (2006); United States v. Varma, 691 F.2d 460, 462 (10th Cir. 1982).

Clearly, then, the issue of what conduct is outside the bounds of professional medical practice is one for determination by a jury, with or without the benefit of expert testimony. United States v. DeBoer, 966 F.2d 1066, 1069 (6th Cir. 1992); United States v. Rosenberg, 515 F.2d 190, 199 (9th Cir. 1975), cert. denied, 423 U.S. 1031 (1975); Tran Tong Cuoung, 18 F.3d at 1135; Feingold, 454 F.3d at 1006-07.

Although the conviction of a licensed physician or pharmacist requires proof that he or she was dispensing or distributing drugs outside the course of professional practice, the indictment need not specifically allege this element. United States v. Steele, 147 F.3d 1316 (11th Cir. 1998)(en banc), cert. denied, 528 U.S. 933 (1999); United States v. Fuchs, 467 F.3d 889, 901 (5th Cir. 2006); United States v. Polan, 970 F.2d 1280, 1282 (3rd Cir. 1992), cert. denied, 507 U.S.953 (1993); United States v. Seelig, 622 F.2d 207, 211-12 (6th Cir. 1980), cert. denied, 449 U.S. 869 (1980); United States v. Roya, 574 F.2d 386, 391 (7th Cir.

1978), *cert. denied*, 439 U.S. 857 (1978).   Similarly, the indictment need not specify the precise dates, locations, drug amounts and purchasers.  <u>Fuchs</u>, 467 F.3d at 901; <u>Polan</u>, 970 F.2d at 1282; <u>Seelig</u>, 622 F.2d at 211-12; <u>Roya</u>, 574 F.2d at 391.

In some of the cases dealing with prosecutions of physicians and pharmacists under 21 U.S.C. § 841, the courts have referred to an interpretive regulation promulgated by the Attorney General, which requires that every prescription for a controlled substance "be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).  *See*, *e.g.*, <u>United States v. DeBoer</u>, 966 F.2d 1066, 1068 (6th Cir. 1992) (physician/defendant referred to this regulation as providing a "good faith" defense); <u>United States v. Green</u>, 511 F.2d 1062, 1069-70 (7th Cir. 1975) (holding that the predecessor regulation, 21 C.F.R. § 306.04(a), does not expand the meaning of § 841(a), but rather seeks to define the exemption clause of that section).

In the recent decision of <u>Gonzalez v. Oregon</u>, 546 U.S. 243, 126 S.Ct. 904 (2006), the Supreme Court considered the validity of an Interpretive Rule, issued by former Attorney General John Ashcroft pursuant to this regulation, determining that the use of controlled substances to assist suicide is not a legitimate medical practice and that dispensing or prescribing controlled substances for this purpose violates the CSA.  The State of Oregon, which had enacted a statutory scheme permitting such prescriptions

under certain carefully defined circumstances, and others, brought suit to enjoin enforcement of this Interpretive Rule.

The Government argued that the Rule was an elaboration of 21 C.F.R. § 1306.04(a), one of the Attorney General's own regulations. The Court rejected this argument, finding that the regulation did "little more than restate the terms of the statute itself," by repeating two statutory phrases and attempting to summarize others. Gonzalez, 126 S.Ct. at 915. The Court found that the Attorney General's interpretation of the statute was not entitled to deference, concluding that "the CSA's prescription requirement does not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct." Id. at 925.

In reaching this conclusion, the Court found that the CSA's prescription requirement is "a provision that ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse," and which "bars doctors from peddling to patients who crave the drugs for those prohibited uses." Id., citing Moore, 423 U.S. at 135, 143. Thus, the CSA regulates medical practice only "insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood." Gonzalez, 126 S.Ct. at 923.

The Court did acknowledge, however, that the while the Attorney General lacks the power to decide what the CSA says, he is charged with evaluating compliance with the statute, in deciding

18

about registration and in deciding whether to prosecute.   Id. at

919.

## C. Application to the Instant Motions to Dismiss

Defendants E.V.A. Global and Tropic Spiral Systems

contend that the statute (21 U.S.C. § 841(a)(1)) is

unconstitutional as applied to them because there is no law which

precludes the sale of prescription medication over the Internet,

where the patient and the physician who provides the medication

never meet face to face.  They also assert that since the statute

is ambiguous, the rule of lenity precludes their conviction.

Defendant Howard Helfant advances similar arguments.  He

urges that: (1) the Government's theory of prosecution is premised

upon an arbitrary conclusion that an online physician questionnaire

does not amount to a legitimate physician/patient relationship; (2)

his due process rights were violated because, presumably, the

Government instructed the grand jury based on this erroneous theory

of prosecution; (3) Congress never intended to criminalize this

type of conduct; (4) the states, not the federal Government, should

regulate what constitutes the legitimate practice of medicine; (5)

the defendant's reliance on the online questionnaire utilized in

this case does not amount to the sort of breach of professional

conduct required for prosecution under § 841(a)(1), and (6)

Congress never intended to authorize criminal prosecution of

medical professionals based upon such a vague interpretation of the

applicable regulation, 21 C.F.R. § 1306.04.

These arguments ignore the fact that the indictment in this case is not premised upon any statute or rule of law that specifically precludes the sale of prescription drugs over the Internet. It is, instead, premised upon a theory that the drugs in this case were prescribed and distributed outside the bounds of professional medical practice. This is an element of the offense which the Government must prove to the jury, and is not properly the subject of a motion to dismiss. Indeed, no defendant has cited a single case in which an indictment charging a violation of § 841 has been dismissed based on any of the arguments advanced in their six motions.

The related claim that § 841 is unconstitutional as applied to the defendants in this case is foreclosed by Moore, supra, and other decisions which have rejected similar arguments, including the claim that the rule of lenity should apply. United States v. Collier, 478 F.2d 268 (5th Cir. 1973); United States v. DeBoer, 966 F.2d 1066, 1068-69 (6th Cir. 1992); United States v. Rosenberg, 515 F.2d 190, 197-98 (9th Cir. 1975).

Defendant Hannibal Edwards asserts a licensed physician cannot be charged with illegal distribution of drugs prescribed by him, but must be charged with illegally "dispensing" those drugs, in violation of 21 U.S.C. § 841(a)(1). Once again, the defendant does not point to any facial defect in the indictment, which simply tracks the statute. Accordingly, his argument should be deferred until the conclusion of the Government's case-in-chief at trial, where it may presented in a motion for judgment of acquittal

pursuant to Rule 29.  United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987).

Moreover, as the Government points out in its response, its theory of prosecution is that no lawful prescriptions were issued by the defendant in this case.  Under such circumstances, a physician may be convicted of illegally distributing, rather than dispensing, controlled substances.  United States v. Deckle, 165 F.3d 826, 828 (11th Cir. 1999); United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998).

Several defendants advance arguments based on the decision in Gonzalez v. Oregon, supra.  In the second of his motions to dismiss, defendant Edwards contends that Gonzalez stands for the proposition that the CSA does not permit the Government to charge or a jury to decide that the medical practice of prescribing controlled substances over the Internet without a face-to-face encounter constitutes drug dealing, without proof that the substances were distributed to addicts or abusers.

As noted previously, the holding of Gonzalez addressed an Interpretive Rule dealing with the prescription of drugs to assist suicide. In dicta, the Court did note that the CSA's prescription requirement is designed to ensure that patients use controlled substances under the supervision of a doctor, so as to prevent addiction and recreational abuse, and precludes doctors from peddling to patients who crave the drugs for those uses.  This is a far cry from holding that in prosecutions for the illegal distribution of drugs under § 841, the Government must allege

21

and/or prove that the individuals who actually received the prescribed drugs were addicts or drug abusers.

Under the Government's theory of prosecution in the instant case, a reasonable jury could find that the defendants were acting as drug "pushers," pursuant to the characterization in Moore. This Court should decline the defendant's invitation to expand the holding of Moore to require proof that the defendants "pushed" drugs to individuals who were actual drug abusers. No case decided under § 841 has imposed such a requirement.

Defendant Serge Francois argues that Gonzalez dictates a finding that Congress did not intend to impose criminal sanctions based on a "completely standardless" regulation: 21 C.F.R. § 1306.04(a), which requires that every prescription for a controlled substance "be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Defendant Paul Wiseberg makes a related argument that, under Gonzalez, violation of § 1306.04(a) cannot constitute a criminal offense, since the Attorney General is not authorized to regulate the practice of medicine.

The Gonzalez court found that § 1306.04(a) did no more than restate, or "parrot" the provisions of the prescription provisions of the CSA. The Court was not concerned with the regulation, but with a black and white rule issued by the Attorney General based on his interpretation of the statute (and issued pursuant to the regulation). The Gonzalez Court expressed no

dissatisfaction with the language of § 1306.04(a), other than to note that it shed no light upon the issue to be decided.

Simply put, the Gonzalez opinion did nothing to disturb the holding in Moore, supra, which was based solely on the statutory provisions of the CSA, without reference to any regulation issued pursuant to the Act or to any Interpretive Rule. The Gonzalez decision has no bearing on the validity of the indictment in this case, and the defendants are entitled to no relief based on its holding or dicta.

Finally, Defendant Wiseberg argues that the instant indictment is facially defective because it fails to allege that the conduct of the defendants was "outside the course of professional practice" and "not for a legitimate medical purpose", or that the statutory exemption for registrants is inapplicable. Additionally, he contends that the indictment does not provide sufficient particulars regarding the place where substances were distributed, the people to whom they were distributed, the manner of distribution and the formation and conduct of the alleged conspiracy, and that Count 1 of the indictment alleges the existence of multiple conspiracies.

These are the only claims which are clearly appropriate for inclusion in a motion to dismiss, since they address the sufficiency of the indictment. Unfortunately for the defendant, his contentions are foreclosed in this Circuit. United States v. Steele, 147 F.3d 1316 (11th Cir. 1998) (en banc) (no requirement that the inapplicability of the statutory exemption be alleged in the

indictment); <u>United States v. Steele</u>, 178 F.3d 1230, 1235 (11th Cir. 1999), *cert. denied*, 528 U.S. 933 (1999) (indictment need not allege specify the precise dates, locations, drug amounts and purchasers); <u>United States v. Tokars</u>, 95 F.3d 1520 (11th Cir. 1996), *cert. denied*, 520 U.S. 1132 (1997) (issue of whether Government proved multiple conspiracies should be submitted to the jury).

## D. <u>Entrapment by Estoppel</u>

Defendants E.V.A. Global and Tropic Spiral Systems contend that the Government is estopped from prosecuting them based on an order issued by United States District Judge Anthony Alaimo in a case involving co-defendant Lawrence Pinkoff, who was on probation for federal tax violations in the Southern District of Georgia. At that time, Pinkoff also was serving a Florida state sentence for medicare prescription fraud.

The issue at the hearing before Judge Alaimo was whether Pinkoff's terms of probation should be modified to ensure that he was properly paying his present and past due income taxes. During the course of that hearing, counsel for Pinkoff contended that Pinkoff's employment as a principal operator of E.V.A. Global, was lawful. Counsel's presentation presumably was in response to a possible concern that the defendant was, once again, engaged in the pharmaceutical business. On July 9, 2003, Judge Alaimo issued an order modifying Pinkoff's conditions of probation, essentially approving the parties' joint suggestion that an accounting firm oversee Pinkoff's income, expenses and payment of taxes.

The defendants contend that Judge Alaimo's order necessarily implied a determination by the Court that Pinkoff's activities as operator of E.V.A. Global were lawful. To prevail on a claim of entrapment by estoppel, "a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable - given the identity of the official, the point of law represented, and the substance of the misrepresentation." United States v. Funches, 135 F.3d 1405, 1407 (11th Cir. 1998), cert. denied, 524 U.S. 962 (1998). In this instance, Judge Alaimo made no misrepresentation whatsoever; his order did not even mention the legality of Pinkoff's employment.

Moreover, as the Government points out, entrapment by estoppel is an affirmative defense, not a bar to prosecution, and requires that the misrepresentation of law be made directly to the defendant, not to a third party. United States v. Eaton, 179 F.3d 1328 (11th Cir. 1999). Accordingly, the defendants who have adopted E.V.A. Global and Tropic Spiral Systems' Motion to Dismiss are not entitled to prevail on this claim.

## IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby RECOMMENDED that:

1. Defendants **E.V.A. Global, Inc., and Tropic Spiral Systems, Inc.'s** Motion to Dismiss Indictment on the Grounds That Title 21 U.S.C. § 841(a)(1) Is: (A) Unconstitutional as Applied to the Conduct Alleged Herein, (B) Not Applicable under the Principle

of Lenity or (C) Barred under the Doctrine of Entrapment by Estoppel (DE 344) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols** be DENIED;

2. Defendant **Hannibal Edwards'** Motion for Order Dismissing Indictment for Failure to State an Offense Because a Licensed Physician Cannot Be Charged with Illegal Distribution Based on Invalid Prescriptions (DE 457) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols** be DENIED;

3. Defendant **Serge Francois'** Motion to Dismiss Indictment (DE 464) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols** be DENIED;

4. Defendant **Howard Helfant's** Motion to Dismiss Indictment (DE 472) adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols** be DENIED;

5. Defendant **Paul Wiseberg's** Motion to Dismiss Counts 1 and 9-12 of the Indictment (DE 482), adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, Thomas Walker and Everett Echols** be DENIED, and

6. Defendant **Hannibal Edwards'** Motion for Order Dismissing Indictment for Failure to State an Offense Because the CSA Does Not Prohibit the Medical Practice of Prescribing Controlled Substances

over the Internet Based on a Patient Questionnaire (DE 524), adopted by defendants **Frank Hernandez, Amada Hernandez, Steve Marhee, Lawrence Pinkoff, Paul Wiseberg, Howard Helfant, Edgar Cruz, and Everett Echols** be DENIED.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this ____ day of October, 2007.


LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE


Copies to:

AUSA Ellen Cohen (WPB)
Richard Hersch, Esq. (D-Frank Hernandez)
Omar Guerra Johansson, Esq. (D-Amada Hernandez)
Chris Grillo, Esq. (D-Marhee)
Greg Ross, Esq. (D-Marhee)
Bruce Lyons, Esq. (D-Antonio)
Joe Rosenbaum, Esq. (D-Pinkoff)
Jon May, Esq. (D-E.V.A. Global & Tropical)
David Bogenschutz, Esq. (D-Antoniou)
David Vinikoor, Esq. (D-Wiseberg)
Jeffrey Voluck, Esq. (D-Helfant)
Sean Ellsworth, Esq. (D-Francois)
Alberto Acuna, Esq. (D-Concept RX)
Jeff Harris, Esq. (D-Cruz)
Michael Hursey, Esq. (D-Walker)
Richard Della Fera, Esq. (D-Echols)
Dan Forman, Esq. (D-Edwards and Local Counsel for Hardiman)
Mark Hardiman, Esq. (D-Edwards)
AFPD Chantel Doakes (FTL) (D-Baron)